UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HILARIA C., | |
| Plaintiff, | |
| v. | No. 20 CV 6873 |
| MARTIN J. O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, | Magistrate Judge McShain |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hilaria C. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse or remand [16] is denied, defendant's motion for summary judgment [24] is granted, and the decision denying the application for benefits is affirmed.[1]

## Background

### A.  Procedural Background

In September 2018, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of July 16, 2018. [15-1] 19. The claim was denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) in December 2019. [*Id.*] 37-65. In a decision dated March 24, 2020, the ALJ denied plaintiff's application. [*Id.*] 19-30. The Appeals Council denied review in September 2020 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction over the appeal pursuant to 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [15], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [8, 10].

### B. ALJ's Decision

The ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one of his decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [15-1] 21. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: acute nephritis syndrome with diffuse crescentic glomerulonephritis, granulomatous disease with polyangiitis (vasculitis), obesity, cervical radiculopathy, and lumbosacral degenerative disc disease. [*Id.*] 21-22. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 22-23. Before turning to step four, the ALJ found that plaintiff had the residual functional capacity to perform less than the full range of sedentary work except that, as relevant here, plaintiff could not work in hospitals from July 16, 2018 to February 13, 2019. [*Id.*] 23-29. At step four, the ALJ found that plaintiff could perform her past relevant work as Patient Access/Service Representative, a position that the Dictionary of Occupational Titles classified as Receptionist, both as that work was generally performed and as plaintiff actually performed it, in a hospital setting, as of February 14, 2019. [*Id.*] 29-30. Because that finding meant that plaintiff was not disabled, the ALJ denied her application without proceeding to step five.

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

### I. Evaluation of Dr. Potempa's Opinion

Plaintiff first argues that the ALJ erred in rejecting the opinion of Dr. Leonard Potempa, her treating nephrologist. [17] 8-11. In December 2019, Dr. Potempa submitted an opinion letter stating that plaintiff:

> [s]uffers from a condition that makes it necessary for her to take medication that impair[s] the strength of her immune system. This makes her more susceptible to contracting infections. Moreover, these infections have the potential to be more severe for her than they would be for someone with a normal immune system. In my opinion, it is important for her to avoid situations where she is exposed to people carrying infectious diseases.

[15-7] 2530.

The ALJ considered Dr. Potempa's opinion in his decision, but found it "unpersuasive" because it "contradicts Dr. Potempa's prior notes on" whether plaintiff–who previously worked in a medical clinic and a hospital, where she registered patients and checked them in for appointments–could work in proximity to people carrying infectious diseases. [15-1] 28. The ALJ's decision was based on a treatment note that Potempa prepared on January 8, 2019, which stated that plaintiff "can likely return to work" once she had switched medications from Cytoxan to a combination of azathioprine and prednisone:

> Indices of inflammation have improved with increased Cytoxan. Renal function is stable and proteinuria is also improving. Hematuria is likely to persist chronically, at least to some degree. Will continue on the current regimen for approximately one month and then switch[ ] to a maintenance regime, likely using azathioprine and low-dose prednisone. While the patient remains on Cytoxan, I think it is best for her to avoid exposure to infectious agents. Although there'll be some degree of immunosuppression with the azathioprine, this will be much less of a concern and she can likely return to work at that point.

3

[*Id.*] 544.

The ALJ then explained why he decided that the January 2019 treatment note contradicted the December 2019 opinion, and why Dr. Potempa's failure to explain why his opinion had changed led him to conclude that the opinion was not persuasive:

> I also considered the December 6, 2019 statement from the claimant's provider, Dr. Potempa, which indicated that the claimant needed to avoid situations where she is exposed to people carrying infectious diseases. However, I find this opinion unpersuasive as it contradicts Dr. Potempa'[s] prior notes on this issue. Specifically, I note that on January 8, 2019, Dr. Potempa stated when the claimant transitioned off of Cytoxan and went on Imuran/azathioprine, she could return to work at the hospital. On February 13, 2019, the claimant stopped taking Cytoxan and began taking Imuran, which is azathioprine[ ]. Thus, I find that the evidence supports a finding that after February 13, 2019, the claimant's Cytoxan-related restrictions were no longer present. Accordingly, I find that Dr. Potempa's statement is unpersuasive as it is inconsistent with his prior notes and there is ultimately no indication in the record as to why this would have changed. I further note that the claimant's use of Cytoxan was less than 12 months after the alleged onset date. Thus, the limitations related to her Cytoxan, which are material to the ultimate determination in this case, do not meet the durational requirements under the regulations.

[*Id.*] (internal footnote and citations omitted).

Plaintiff argues that "[t]he ALJ's reasoning is flawed on its face" because Dr. Potempa's January 2019 treatment note did not state that plaintiff "would be able to return to work *at the hospital*." [17] 9 (emphasis in original). Rather, plaintiff contends that the January 2019 treatment note was "clearly a predication [*sic*] based on the normal course of treatment," rather than a black-and-white statement that plaintiff could definitely return to work after switching medications. [*Id.*] 10. Plaintiff insists that there is no contradiction between the January 2019 treatment note and the December 2019 opinion, which was "based on seeing how [plaintiff] actually responded to the change in medications. [*Id.*]. Had the ALJ properly evaluated Dr. Potempa's opinion, plaintiff contends, the ALJ would have concluded that plaintiff could not work in proximity with patients who had infections–and thus could not perform her past relevant work. [*Id.*] 8-9; *see also* [15-1] 62 (vocational expert's testimony that, if plaintiff could not work in proximity to "patients that might have infections," such restriction would eliminate plaintiff's past relevant work "as performed").

In evaluating opinion evidence, the ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id.* "[A] detailed analysis is not required[.]" *Id.* (internal quotation marks and brackets omitted).

The Court rejects plaintiff's argument, which essentially asks the Court to review the evidence that was before the ALJ *de novo* and reweigh it to reach a different conclusion about the consistency and supportability of Dr. Potempa's opinion. But the Court cannot "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Rather, the Court "review[s] the ALJ's decision to determine whether it reflects an adequate logical bridge from the evidence to the conclusions," and a remand is warranted "only if the record compels a contrary result." *Id.* (internal quotation marks omitted). Under that narrow, deferential standard of review, the Court finds that the ALJ built an adequate logical bridge from the evidence to his conclusion that Dr. Potempa's opinion was unpersuasive.

Here, as the ALJ observed, Dr. Potempa's January 2019 treatment note stated that plaintiff needed to "avoid exposure to infectious agents" while taking Cytoxan because of the drug's immunosuppressive effects. [15-1] 544. But Potempa also explained that "immunosuppression" would be "much less of a concern" once plaintiff began taking azathioprine, and that plaintiff "can likely return to work" once she had switched medications. [*Id.*]. In February 2019, Dr. Potempa confirmed that plaintiff "appear[ed] to have achieved remission" and discontinued her Cytoxan and started her on Imuran (the brand name for azathioprine, *see* [*id.*] 28 & n.1). [*Id.*] 584. The record is clear, moreover, that when Potempa wrote the January 2019 treatment note, he knew that plaintiff worked in a medical clinic: in an October 2018 treatment note, Potempa had suggested that plaintiff "remain off work" because she "is on substantial doses of potent immunosuppressive agents and works in a general health care clinic where she is likely to be exposed to any number of infectious agents[.]" [*Id.*] 430. Despite examining plaintiff on multiple occasions between January 2019 and December 2019, Dr. Potempa never revised his statement that plaintiff could "likely" return to work after switching medications. *See* [*id.*] 583-84 (February 13, 2019 treatment note); [*id.*] 585-87 (March 13, 2019 treatment note); [*id.*] 589-90 (April 9, 2019 treatment note); [15-7] 2432-34 (June 18, 2019 treatment note); [*id.*] 2429-30 (July 31, 2019 treatment note). Dr. Potempa did not even revisit this topic when

5

plaintiff experienced a "spike in C-reactive protein" in June 2019, which Dr. Potempa successfully treated with increased dosages of Imuran and prednisone.

These treatment notes provided a substantial evidentiary basis for the ALJ's conclusion that Dr. Potempa's December 2019 opinion was both inconsistent with his January 2019 treatment note and otherwise unsupported by the medical record. Contrary to plaintiff's argument, there is an obvious inconsistency between the January 2019 treatment note, which stated that immunosuppression would be "much less of a concern" after plaintiff switched medications and plaintiff could "likely" return to work at that point, and the December 2019 opinion, which stated that immunosuppression concerns dictated that plaintiff could not work "where she is exposed to people carrying infectious diseases." At the very least, the ALJ could reasonably have viewed the treatment notes to be inconsistent and relied on the lack of an explanation for the apparent contradiction to discount Dr. Potempa's opinion. *See Jaqueline W. v. Kijakazi*, No. 20 C 7095, 2023 WL 4864993, at *4 (N.D. Ill. Jul. 31, 2023) ("an ALJ may permissibly reject a treating physician's opinion if it is internally inconsistent or inconsistent with other evidence").

Finally, plaintiff argues that "it is impossible not to acknowledge that by the time the ALJ had issued his decision on March 24, 2020 significant portions of the country had gone on lock-down and the [Social Security] Administration had ceased in person hearings because of the COVID 19 pandemic." [17] 11. While no one disputes the arrival of the COVID-19 pandemic in the United States and its effect on the Social Security Administration's handling of in-person hearings, these facts have no bearing on the ALJ's decision. To begin, the ALJ reasonably explained why he did not credit Dr. Potempa's opinion that plaintiff needed to avoid work settings where she could be exposed to infectious diseases. With the ALJ having reached that conclusion, the Court does not see how the fact that a new infectious disease became widespread in March 2020 would have changed the ALJ's decision, the premise of which was that plaintiff could safely work in settings that might expose her to infectious diseases. In any event, the Court observes that plaintiff did not submit any evidence relating to her ability or inability to work during the COVID-19 pandemic to the ALJ or in connection with her request for review by the Appeals Council.

In sum, the ALJ built a logical bridge between the evidence relating to plaintiff's ability to work in proximity to infectious diseases and his conclusion that Dr. Potempa's opinion was not persuasive. Accordingly, the Court rejects plaintiff's first argument for reversal and remand.[3]

---

[3] Given this ruling, the Court need not resolve the Commissioner's alternative argument that any error in rejecting Dr. Potempa's opinion was harmless in light of the vocational expert's testimony that plaintiff was capable of performing her past relevant work as it was generally performed (*i.e.*, in other work settings that a hospital or medical clinic).

**II. Subjective Symptom Determination**

Plaintiff next argues that the ALJ did not provide "sufficient explanation to trace the path of his decision" that her subjective symptom allegations were inconsistent with the medical record. [17] 12. Plaintiff contends that the ALJ downplayed the significance of the fatigue she experienced and failed to consider her strong work history. [*Id.*]

"Social Security Regulation 16-3p outlines a two-step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. Next, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Maria S. v. Kijakazi*, No. 20 C 6727, 2023 WL 7130376, at *7 (N.D. Ill. Oct. 30, 2023) (internal quotation marks and citations omitted). "[T]he ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Charles B. v. Saul*, Case No. 19 C 1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "[F]laws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original). The Seventh Circuit has stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

The ALJ concluded that plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the longitudinal medical evidence of record." [15-1] 25. That decision was not patently erroneous. First, the ALJ permissibly considered the extent to which plaintiff's complaints about fatigue were inconsistent with the medical record. *See Tina S. v. Kijakazi*, Case No. 3:21-cv-50167, 2022 WL 3700837, at *3 (N.D. Ill. Aug. 26, 2022). Here, the ALJ noted that plaintiff's GFR (glomerular filtration rate) levels "were normal or close to normal from June 2019 to present," and that there were only three reported instances of fatigue after February 13, 2019. *See* [15-1] 28-29. Moreover, the ALJ credited plaintiff's complaints about fatigue in part, as shown by the ALJ's decision that plaintiff was incapable of performing light work and that she must avoid work that involved climbing ropes, ladders, and scaffolds. [*Id.*] 27 (discussing plaintiff's "documented fatigue" as basis for limiting plaintiff to sedentary work). Second, "[t]he ALJ did not commit reversible error by failing to explicitly discuss

7

[plaintiff's] work history when evaluating her credibility." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). "Although a consistent work history weighs in favor of a positive credibility finding, it is still just one factor among many, and it is not dispositive." *Id.* (internal quotation marks omitted). Here, the ALJ gave multiple valid reasons for discrediting her subjective symptom allegations, such as "the largely normal physical examination findings," the reduced concerns about immunosuppression after plaintiff switched to azathioprine, and the mismatch between the severity of her alleged symptoms and the medical record as a whole. *See* [*id.*] 26-28. Accordingly, the Court rejects plaintiff's second argument for reversal and remand. *See Schrank*, 843 F. App'x at 789; *Halsell*, 357 F. App'x at 722.

## Conclusion

For the reasons set forth above, plaintiff's request to reverse and remand the SSA's decision [16] is denied, defendant's motion for summary judgment [24] is granted, and the decision denying plaintiff's application for benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 23, 2024**